LEMMON, Judge.
This is a suit by the Bank of the South against Fred Korner, the maker of a promissory note, and Mark Smith, whose contract Korner had assigned to the Bank as security for the note. After Korner was discharged in bankrutpcy, the matter proceeded to trial on the merits against Mark Smith, and judgment was rendered holding Mark Smith liable to the Bank for $15,268.75, which was apparently the amount found to be due Korner under the contract. Smith has appealed.
The Department of Highways had expropriated certain immovable property from L. P. Smith (apparently not related to Mark Smith). In 1967 Mark Smith paid $50,000.00 to L. P. Smith for an option to purchase the residual property not used for highway construction, when and if the unused portion became available to L. P. Smith for reacquisition under R.S. 48:221.
In 1969 Mark Smith entered into a contract with Korner, whereby in consideration for the services to be performed by Korner in negotiating with the Department for reacquisition of the property, Mark Smith agreed to pay Korner one-half of the net profits to be derived from the immediate resale of the reacquired property to a third party. This agreement was subsequently modified on several occasions.
Korner thereafter assigned his rights in the contract with Mark Smith to the Bank as security for the note. The property was ultimately required by L. P. Smith and sold the same day to a third party for $144,057.00 more than L. P. Smith paid the Department as the price of reacquisition.
*199 Serious factual and legal questions are presented as to whether the “assignment” was an assignment (transfer) or a pledge or even a security device at all, whether the Bank provided the required notice to Mark Smith of Korner’s “assignment”, whether Korner’s rights under the contract were terminated on account of his failure to perform, and whether a subsequent payment to Korner on behalf of Mark Smith constituted a payment for services under the contract. However, we find it unnecessary to reach these issues.[1]
R.S. 48:221, while authorizing the Department of Highways to sell any excess property at public auction after completion of the highway for which the property was acquired, also provides an exception to the general requirement of a public sale and authorizes the Department in its discretion to sell the excess property to the original vendor at private sale for the original price or the current appraised value, whichever is higher.
When Mark Smith employed Kor-ner to “negotiate” with the Department of Highways, the only thing subject to negotiation was whether or not the Department would exercise its discretion to sell the excess property at private sale at a price to be determined as provided in the statute. However, from the overall circumstances surrounding the negotiations (to the extent these circumstances are incredibly revealed by the record) — that Mark Smith paid $50,000.00 for an option to purchase the property upon reacquisition, that he agreed to divide the profits from an immediate resale (above $50,000.00 and other expenses) with Korner, that Korner agreed to pay $20,000.00 out of his half of the anticipated profits to Howard Netterville and James Curro (who intervened in the suit to collect on that agreement) solely for making “phone calls to Baton Rouge” and that the excess property supposedly sold in compliance with the statute at current appraised value was resold the same day at a price almost 30% higher than that received by the Department — we conclude that the parties intended by the contract that Korner (and others) would “negotiate” with the Department of Highways to have the sale price set at less than the price required by the statute (to the obvious detriment of the State of Louisiana).[2] Obviously, the agreement between Mark Smith and Kor-ner did not have the “lawful purpose” required by C.C. art. 1779 for the validity of a contract.
The Bank is at best an assignee attempting to enforce Korner’s rights under an invalid contract.[3] If Korner were attempting to enforce these rights, we would undoubtedly hold the contract unenforceable. We have hesitantly concluded that we should likewise deny enforcement of such a contract by Korner’s assignee, although this denial may (if his other defenses to this suit fail) enure to the benefit of the party who knowingly profited from Kor-ner’s “negotiations”. We simply are unwilling to allow the courts to be used to enforce contracts with an illegal purpose such as that involved in this suit. We consider the contract, which bargained for the performance of an illegal act, as having no existence in law. 2 Plainol, Traité Éíémentaire de Droit Civil § 1009 (La.St. Law Inst.Trans., 11th ed. 1959); IV Au-bry & Rau, Cours de Droit Civil Frangais § 344 (La.St.Law Inst.Trans., 6th ed. 1965).
Accordingly, the judgment of the trial court is reversed, and it is now ordered *200 that this suit be dismissed. Each party is to bear its own costs.

Reversed and rendered.

GULOTTA, J., dissents and assigns reasons.

. When a majority of the non-unanimous panel of three judges who originally heard this case proposed to modify the trial court judgment, the case was submitted to a panel of five judges in accordance with La.Const.1974, art. 5, § 8(B).

. The case has been called to the attention of the Attorney General for any investigation and action deemed necessary by his office.

.The Bank’s then president testified that Korner gave the Bank a copy of the contract with Mark Smith and that “we were involved in helping with the negotiations for the reacquisition of that Square 317.” He also admitted that he had co-signed other of Komer’s debts.